UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

KRYSTAL SANTIAGO, et al.,

                                    **Plaintiffs,**

         -against-

INFORMATION RESOURCES INC., et al.,

                                    **Defendants.**

-----------------------------------------------------------------X

20-CV-7688 (AT)(SN)

**ORDER & OPINION**

**SARAH NETBURN, United States Magistrate Judge:**

Plaintiff Krystal Santiago, proceeding individually, and Plaintiff Scarlett Osorio, proceeding individually and on behalf of others similarly situated, bring this action against Information Resources Inc. ("IRI") and Jeff Neuman alleging various forms of employment discrimination, including individual violations of Section 1981 of the Civil Rights Act of 1866, Title VII of the Civil Rights Act of 1964, the New York State Human Rights Law, and the New York City Human Rights Law, the New York State Pay Equity Law, N.Y. Lab. Law § 193 *et seq.*, and violations of the Equal Pay Act, 29 U.S.C. § 206 *et seq.* ("EPA"). Osorio brings her EPA claim on her own behalf and on behalf of a collective. See ECF No. 105.

Osorio moves to conditionally certify a collective action under the EPA comprised of all female analysts, consultants, principals, vice presidents, and senior vice presidents who worked for IRI in New York or out of IRI's New York office for at least one work week since September 18, 2017.[1] She also seeks equitable tolling, and proposes a notice and reminder notice of

---

[1] The definition of the desired collective is inconsistent across the pleadings and briefing. The Amended Complaint defines the collective as "female employees, including women of color, who have been, are now or will be employed by IRI in New York at any time during the applicable liability or statute of limitations periods." ECF No. 47 ("FAC") ¶ 157. The brief supporting the motion for conditional

conditional certification for the Court's authorization. Finally, Osorio requests discovery of putative collective members' contact information to facilitate the notice process. The motion is GRANTED in part and DENIED in part.

## BACKGROUND

### I. Facts Relevant to Certification

The following facts are taken from the parties' submissions in connection with the motion for conditional certification and from Plaintiffs' amended complaint.

IRI is a data analytics and market research company. The company is organized by separate divisions and its clients operate in a wide variety of industries, such as consumer packaged goods or beer, wine, and spirits. ECF No. 70 ("Saldeen Decl.") ¶¶ 3-4. IRI job postings are responsive to either general staffing needs or specific client requests, so job descriptions differ depending on a particular client's needs. See Saldeen Decl. Exs. B-D. In general, however, job descriptions on IRI's website tend to be generally similar in tone and content for a given job title.[2] See id.; ECF No. 65 ("Kumar Aff.") Ex. 5. Job titles are standard across the company and employees follow a general progression in job title, from analyst to consultant to principal (which includes vice president and senior vice president).

Consultants, analysts, and principals in IRI's New York office work in one of eleven separate industry-related departments. Saldeen Decl. ¶ 10. Employees are generally hired and

---

certification defines the collective as "female analysts, consultants, principals, vice presidents, and senior vice presidents who worked for the Defendants in New York during at least one workweek since September 18, 2017." ECF No. 64 (Br.) at 1. Plaintiff Osorio's reply brief defines the collective as "all female analysts, consultants, principals, vice presidents, and senior vice presidents who worked for IRI for at least one day in New York or out of IRI's New York office." ECF No. 75 (Reply Br.) at 1. The Court resolves this motion using the definition set forth in Plaintiff Osorio's opening brief, ECF No. 64.
[2] Compare, e.g., Position 2021-696 – Client Service Analyst, IRI, https://tinyurl.com/muv9xfdm (last visited Feb. 16, 2022) with Position 2022-104 – Client Service Analyst, IRI, https://tinyurl.com/55kmr88p (last visited Feb. 16, 2022) and Position 2022-141 – Client Service Analyst, IRI, https://tinyurl.com/3tak39ds (last visited Feb. 16, 2022).

assigned to a team dedicated to one client and are assigned to one of three "progression" levels based on their competencies and skills acquired through experience and training. Id. ¶ 13. IRI employees' job duties vary from role to role on each team depending on their client's industry, department, and "progression" level. Salary at IRI is negotiable and based on factors such as business needs, employee duties and responsibilities, education, certification and licensure, training, and market salary reference data. Id. ¶¶ 21-22. Salary increases and bonuses are based largely on a performance evaluation system. Saldeen Decl. Ex. A; ECF No. 47 ("FAC") ¶ 32.

Named Plaintiff Osorio was hired by IRI as a Client Insights Consultant in October 2019. Kumar Aff. Ex. 4 ("Osorio Decl.") ¶ 5. She had about six years of work experience, including two and a half years of market research experience, before she started working at IRI. Id. ¶¶ 6-7. Her duties were similar to those of other Client Insights Consultants. Id. ¶¶ 9-11. Osorio alleges that IRI paid her and other current and former employees less than their male counterparts. Her allegation is based on a conversation that she had with a male Client Insights Consultant who had the same job duties as her and worked for the same client but made approximately 10% more than she did, id. ¶ 13, and upon information and belief that other male members on her client team performed the same job duties but were paid approximately 10% more, FAC ¶¶ 101-02. Both Osorio and Santiago allege that IRI had a culture that "marginalized" women and limited their career opportunities. FAC ¶ 13. Santiago spoke with a female Client Insights Principal who said she had access to IRI's payroll data, and that on average, IRI paid female employees 10% less than their similarly situated male counterparts. Id. ¶¶ 106-07. In general, both Plaintiffs allege that they and other female IRI employees were subjected to biased treatment and standards due to their gender. E.g., id. ¶¶ 111, 116, 119-20.

## II. Procedural Background

Plaintiffs filed their original complaint on September 18, 2020. ECF. No. 1. The complaint alleged claims under federal, state, and local law as described above, and Plaintiffs Santiago and Osorio brought the case as would-be representatives of any certified EPA collective. After Defendants sought leave to dismiss Plaintiffs' complaint in part, Plaintiffs filed an amended complaint on June 4, 2021. ECF. No. 47.

Plaintiffs moved for conditional certification of an EPA collective on August 6, 2021. ECF. No. 63. In support of their motion, they filed an affirmation by attorney Amit Kumar, declarations by Santiago and Osorio, and other exhibits. See Kumar Aff. & Exs. 3-7. Defendants opposed the motion and filed their own supporting exhibits, including a declaration by IRI's Human Resources Director Moira Saldeen. See Saldeen Decl. & Exs. A-N.

On January 12, 2022, Attorney Amit Kumar moved to withdraw as counsel for Plaintiff Santiago only. ECF No. 92. Granting the request made Santiago a pro se litigant. ECF Nos. 103, 105. Because pro se plaintiffs cannot represent a collective, Santiago is no longer a representative of the putative EPA collective in this case. In resolving this motion, I therefore consider Osorio the sole representative of the proposed collective.

## DISCUSSION

## I. Legal Standard

The EPA, which was enacted in 1963 as an amendment to the Fair Labor Standards Act ("FLSA"), prohibits payment of unequal wages for equal work on grounds of sex, unless the difference is justified by seniority, merit, quality or quantity of production, or any other factor not based on sex. 29 U.S.C. § 206(d); see Anderson v. State Univ. of N.Y., 169 F.3d 117, 119 (2d Cir. 1999), vacated on other grounds, 528 U.S. 1111 (2000). "As part of the FLSA, the EPA utilizes the FLSA's enforcement mechanisms and employs its definitional provisions," including

4

the use of collective actions. Id. "A collective action allows . . . discrimination plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity." Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 170 (1989).

Federal law permits employees to sue "for and in behalf of . . . themselves and other employees similarly situated" for violations of FLSA. 29 U.S.C. § 216(b). All potential collective members must "opt in" to the action. Moore v. Publicis Groupe SA, No. 11-cv-1279 (ALC)(AJP), 2012 WL 2574742, at *8 (S.D.N.Y. June 29, 2012) (collecting cases). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.'" Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 643 (S.D.N.Y. 2010) (internal quotation marks omitted).

FLSA (and EPA) "certification" is simply "the district court's exercise of the discretionary power . . . to facilitate the sending of notice to potential class members." Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). While the Court of Appeals has not offered a definitive standard for certification of FLSA collective actions, it has endorsed the two-step approach to certification widely used by district courts in this Circuit. Id. at 554-55.

"The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." Id. at 555. To establish that they are "similarly situated" to putative collective members, the named plaintiffs must "make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'" Id. (quoting Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 261

5

(S.D.N.Y. 1997) (Sotomayor, J.)). "The modest factual showing cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." Id. (cleaned up) (emphasis in original); see Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (describing plaintiff's burden as "very low" and "minimal"). At this first stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations," and "should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." Cunningham, 754 F. Supp. 2d at 644 (cleaned up). "Once a court is satisfied that the first-stage inquiry has been satisfied, it conditionally certifies the class and orders notice to putative class members, who are given the opportunity to opt in." Id.

The second step, typically taken upon the completion of discovery, requires the court to determine "on a fuller record" "whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs. The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Myers, 624 F.3d at 555.

Because the first step of conditional class certification is only a "preliminary determination," Harrington v. Educ. Mgmt. Corp., No. 02-cv-0787 (HB), 2002 WL 1009463, at *2 (S.D.N.Y. May 17, 2002), and is "non-dispositive," Patton v. Thomson Corp., 364 F. Supp. 2d 263, 266 (E.D.N.Y. 2005), magistrate judges have jurisdiction to hear such motions. See also Mazur v. Olek Lejbzon & Co., No. 05-cv-2194 (RMB)(DF), 2005 WL 3240472, at *2 n.1 (S.D.N.Y. Nov. 30, 2005) (magistrate judges may decide a motion to approve a collective action

"under which the standard for granting approval is far more lenient, and indeed, materially different, than the standard for granting class certification under Fed. R. Civ. P. 23").

## II. Plaintiff's Showing That She Is "Similarly Situated" to the Proposed Collective

The focus of the inquiry before the Court "is not on whether there has been an actual violation of law but rather on whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated. Thus, in order to satisfy this standard, the named plaintiff need only demonstrate a 'factual nexus' between his or her situation and the situation of other current and former employees." Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (internal citations omitted) (quoting Hoffmann, 982 F. Supp. at 261).

A plaintiff is not required to conduct rigorous statistical analysis to prove that she is similarly situated to the proposed opt-in plaintiffs. "Courts regularly authorize notice to potential opt-in plaintiffs based on employee affidavits setting forth an employer's failure [to comply with FLSA]." Diaz v. S & H Bondi's Dep't Store, No. 10-cv-7676 (PGG), 2012 WL 137460, at *4 (S.D.N.Y. Jan. 18, 2012). Plaintiff's "burden is minimal because the determination that the parties are similarly situated is merely a preliminary one," and the Court may modify or reverse that determination after discovery. Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006). But "[c]onclusory allegations" are not enough; a plaintiff must offer something of "evidentiary value." Morales v. Plantworks, Inc., No. 05-cv-2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification where plaintiffs' submissions made no allegations of a common policy or plan affecting plaintiffs and potential opt-in plaintiffs other than a conclusory statement in the complaint). "Plaintiffs may satisfy their 'minimal' burden by relying on their own pleadings and affidavits, or the affidavits of other potential class members."

7

Diaz, 2012 WL 137460, at *3 (quoting Anglada v. Linens 'N Things. Inc., No. 06-cv-12901 (CM)(LMS), 2007 WL 1552511, at *5 (S.D.N.Y. Apr. 26, 2007)).

As an initial matter, Defendants' argument that Plaintiff cannot assert plausible EPA claims, "much less" obtain conditional certification, fails. Courts do not weigh the merits of a plaintiff's claim at the conditional certification stage of EPA litigation. Cunningham, 754 F. Supp. 2d at 644; Diaz, 2012 WL 137460, at *3; Shajan v. Barolo, Ltd., No. 10-cv-1385 (CM), 2010 WL 2218095, at *1 (S.D.N.Y. June 2, 2010) ("Weighing of the merits is absolutely inappropriate."). In a similar vein, Defendants attack Plaintiff's reliance on her own affidavit and her use of hearsay. "Based on the legal standards applicable to this motion, these arguments are unavailing." Zeledon v. Dimi Gyro LLC, No. 15-cv-7301 (TPG)(DF), 2016 WL 6561404, at *10 (S.D.N.Y. Oct. 13, 2016) (citing Mata v. Foodbridge LLC, No. 14-cv-8754 (ER), 2015 WL 3457293, at *3 (S.D.N.Y. 2015)); see Fasanelli v. Heartland Brewery, Inc., 516 F. Supp. 2d 317, 321-22 (S.D.N.Y. 2007) (finding that a plaintiff may make the required showing based on hearsay). Defendants also cannot defeat Plaintiff's motion by attacking her credibility. As noted above, on a motion for conditional certification, the Court will not make credibility determinations. Cunningham, 754 F. Supp. 2d at 644.

Defendants also stress that Plaintiff has not established that she and members of the putative collective worked in the same establishment. While the EPA does require that the employees work in the same "establishment" for purposes of compensation comparison, see 29 U.S.C. § 206(d)(1), "there is limited authority that district courts must engage in the establishment analysis when considering the certification of a collective action under the EPA." Moore, 2012 WL 2574742, at *11 (citing cases). Without delving into the matter too deeply, I note that the proposed collective is limited to IRI employees in New York, and a review of IRI's

8

public website suggests that there is a single company office in the state.[3] Even if Plaintiff was hired to work on-site for a specific client, whether she, the putative collective, and their male counterparts all worked at the same establishment is a factual question. See Barrett v. Forest Lab'ys, Inc., No. 12-cv-5224 (RA)(MHD), 2015 WL 5155692, at *8 (S.D.N.Y. Sept. 2, 2015). As is the "general approach," I "decline to determine at the conditional-certification stage whether the plaintiffs will be able to satisfy the 'establishment' requirement." Id. (citing Kassman v. KPMG LLP, No. 11-cv-03743 (LGS), 2014 WL 3298884, at *8 (S.D.N.Y. July 8, 2014); Moore, 2012 WL 2574742, at *11).

As Defendants point out, the EPA prohibits sex-based discrimination in pay for work performed with "equal skill, effort, and responsibility" and "under similar working conditions." 29 U.S.C. § 206(d)(1). Defendants reason that, because the putative collective encompasses different job titles outside Osorio's division, department, and assigned client, she has not demonstrated that she has performed "equal work" to other members of the collective. But "[c]ourts have found employees 'similarly situated' for purposes of the FLSA where they performed different job functions or worked at different locations, as long as they were subject to the same allegedly unlawful policies." Diaz, 2012 WL 137460, at *6.

I find, however, that Plaintiff's submissions are insufficiently detailed to merit conditional certification of the broad collective she seeks. The operative complaint and Osorio's declaration describe multiple conversations with other IRI employees supporting Osorio's claim that IRI paid her and other current and former female employees less than their male counterparts. See, e.g., Osorio Decl. ¶¶ 12-13 (conversation with a male Client Insights Consultant with same job duties as Osorio who made approximately 10% more than she did); id.

---

[3] Contact Us, IRI, https://www.iriworldwide.com/en-us/company/contact-us (last visited Feb. 7, 2022).

¶ 14 (Osorio's "near weekly" conversations about pay with other female IRI "Consultants"); FAC ¶¶ 106-07 (Santiago's conversation with a female Client Insights Principal who said she had access to IRI's payroll data and that IRI paid female "Consultants" less than their similarly situated male counterparts). Id.

The details offered by Osorio to show her personal knowledge of other female IRI employees' pay are, nonetheless, "somewhat meager." Zeledon, 2016 WL 6561404, at *10. Other than Santiago, Osorio does not name any of the other female employees she spoke with about pay. She provides a date only for the conversation that she had with the male Client Insights Consultant. Plaintiff's use of "Consultants" to refer to all levels of IRI employees, see Osorio Decl. ¶ 3, also unnecessarily muddies the waters. It is unclear whether Osorio's near weekly conversations about pay disparity were only with consultants or also with employees of other levels. It is similarly unclear whether the female principal with access to IRI's payroll data said that IRI paid only female consultants less or *all* female employees less. See Benavides v. Serenity Spa NY Inc., 166 F. Supp. 3d 474, 481-82 (S.D.N.Y. 2016) ("When plaintiffs base their assertions regarding similarly situated employees upon their own observations and conversations with other employees," courts require "details about these observations and conversations, such as where and when they occurred and the names of the employees involved.").

Given the lack of clarity and detail provided, I find Plaintiff's proffer "regarding . . . common exposure to an allegedly unlawful compensation policy to be sufficient to meet the low threshold necessary for conditional certification," but only for employees at the consultant level, not analyst or principal.[4] Zeledon, 2016 WL 6561404, at *10; see Qiang Lu v. Purple Sushi Inc.,

---

[4] This conclusion is further supported by the fact that, since Plaintiff's motion for conditional certification was filed, another plaintiff has opted in; while employed by IRI, she too appears to have worked as a consultant. See ECF No. 67; Nicole Feldman, LinkedIn, https://www.linkedin.com/in/nicolefeldman/ (last visited Feb. 7, 2022).

447 F. Supp. 3d 89, 95-96 (S.D.N.Y. 2020) (finding conditional certification appropriate for some but not all types of employees in proposed collective due to "conclusory allegations" insufficient to establish factual nexus between delivery worker plaintiffs and other non-managerial employees).

In sum, Plaintiff's motion for conditional certification should be granted, but only as to female consultants who worked for the Defendants in New York during at least one workweek since September 18, 2017.

### III. Equitable Tolling

Plaintiff seeks equitable tolling of the statute of limitations until such time that she is able to send notice to potential opt-in plaintiffs. Although equitable tolling is generally appropriate "only in rare and exceptional circumstances," Vasto v. Credico (USA) LLC, No. 15-cv-9298 (PAE), 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016), "[a] district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief," Jackson v. Bloomberg, L.P., 298 F.R.D. 152, 170 (S.D.N.Y. 2014). "Unlike Rule 23 class actions, in a FLSA [or EPA] collective action the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit," and "[t]he delay required to decide a motion may warrant equitable tolling." Id. (citing Yahraes v. Rest. Assocs. Events Corp., 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011)).

Plaintiff anticipated moving for conditional certification before the initial pretrial conference, ECF No. 26, and the motion has been fully briefed for more than five months, ECF No. 75. "Absent tolling of the limitations period, a substantial number of class members may

11

now be time-barred through no fault of counsel or the class representative." Jackson, 298 F.R.D. at 170. Given the circumstances, "the Court declines to adopt a piecemeal approach to equitable tolling, which would waste judicial resources, further delay resolution of this action, and contravene the purposes of FLSA." Id. at 171. "Accordingly, the statute of limitations will be tolled as of the date of the filing of [Plaintiff's] motion" for conditional certification. McGlone v. Contract Callers, Inc., 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012).

### IV. The Proposed Notice and Discovery of Putative Collective Members' Contact Information

Defendants mount a series of objections to Plaintiff's proposed notice and request for disclosure of potential collective members' names and contact information. Generally, questions regarding the form and content of a FLSA or EPA notice are largely left to the Court's discretion. See Moore, 2012 WL 2574742, at *12; In re Penthouse Exec. Club Comp. Litig., No. 10-cv-1145 (NRB), 2010 WL 4340255, at *4-5 (S.D.N.Y. Oct. 27, 2010) ("[T]he district court has discretion regarding the form and content of the notice.").

Plaintiff argues that there is no need for the parties to meet and confer regarding the notice because "Defendants have already stated their objections," but there is no evidence that the parties ever discussed the proposed notice before Plaintiff filed her motion for conditional certification and attached the notice as an exhibit. Without an opportunity to confer with Plaintiff before she filed this motion, it was only logical that Defendants' first opportunity to object to the form of the notice would come not during the meet and confer process but upon submission of their opposition.

Therefore, counsel on both sides is ordered to consult and make reasonable efforts to arrive at an agreed-upon form of notice and process for the disclosure of potential collective members' contact information. The parties are to complete this process within seven days.

Failing agreement, the parties are to submit their competing versions of the notice with a written explanation for their differences. The parties' submissions should also address the disclosure of potential collective member contact information; if the parties disagree, the submissions should explain the grounds for that disagreement. The submissions are due by February 25, 2022.

## CONCLUSION

Plaintiff's motion for conditional certification is granted as to female consultants who worked for the Defendants in New York during at least one workweek since September 18, 2017. The statute of limitations will be tolled from the date of the filing of Plaintiff's motion, which is August 6, 2021, until the date of this Order. Within seven days, the parties' counsel is ordered to complete the meet and confer process regarding the form of notice and disclosure of potential collective members' contact information. Should the parties fail to agree, they are to file their competing versions of the notice for the Court's review. The parties' proposed notice or submission explaining their disagreement is due by February 25, 2022.

**SO ORDERED.**

_____
SARAH NETBURN
United States Magistrate Judge

DATED:   February 16, 2022
         New York, New York